JOHN BELL v. THE STATE.

No. 5173.   Decided November 6, 1918.

</div>

**1.—Gaming—Keeping Gaming House—Circumstantial Evidence—Charge of Court.**

Where, upon trial of keeping a gaming house, the case was one of circumstantial evidence, the court should have submitted a charge thereon.

**2.—Same—Evidence—Impeaching Witness—Conduct of District Attorney.**

Where, upon trial of keeping a gaming house, the State's witness failed to give testimony adverse to the State he could not be impeached by his evidence before the grand jury, and the remark of the district attorney that he was laying a predicate for a case of perjury against his witness was clearly inadmissible.

**3.—Same—Evidence—Hearsay—Ownership.**

Where, upon trial of keeping a gaming house, testimony that people told witness that it was defendant's gambling house was not admissible, as control and ownership of the house could not be proved in this manner.

4.—Same—Charge of Court—Playing Cards—Keeping Gaming House.

Where, upon trial of keeping a gaming house, there was evidence that defendant played cards there, and the issue of keeping a gaming house was contested by defendant, the court should have submitted a requested instruction that defendant was not on trial for playing at or betting at any game prohibited by law.

5.—Same—Requested Charge—Keeping Gaming House.

Where, upon trial of keeping a gaming house, there was testimony that defendant agreed to assist the owner of the house in finding a renter, the court should have instructed the jury as requested that this testimony alone would not be sufficient to hold defendant responsible for keeping the house for gaming purposes.

Appeal from the District Court of Bowie. Tried below before the Hon. H. F. O'Neal.

Appeal from the conviction of keeping a gaming house; penalty, two years imprisonment in the penitentiary.

The opinion states the case.

*Mahaffey, Keeney & Dalby,* for appellant.—On question of misconduct of district attorney: Downing v. State, 61 Texas Crim. Rep., 519; Davis v. State, 64 id., 8; Taylor v. State, 50 id., 560; Shed v. State, 68 Texas Crim. Rep., 373, 153 S. W. Rep., 125.

On question of hearsay evidence: Taylor v. State, 62 Texas Crim. Rep., 611; Owens v. State, 53 id., 1.                                    ∘

On question of refusal of special charge: Eppison v. State, 198 S. W. Rep., 948.

*E. B. Hendricks,* Assistant Attorney General, for the State.

DAVIDSON, PRESIDING JUDGE.—Appellant was convicted of keeping a gaming house and allotted two years in the penitentiary.

The indictment contains three counts, the first charging appellant with keeping and being interested in keeping certain premises for the purpose of being used as a place to bet with cards and dice; second, that he kept and was interested in keeping certain premises for the purpose of keeping a table for gaming, and, third, that he knowingly permitted premises under his control to be used as a place to bet and wager and gamble with cards and dice.

The evidence shows that appellant had rented four upstairs rooms of a house in Texarkana; that he surrendered the lease contract to the owner, and that it was subsequently rented to another party. That under the control of the other party gambling was carried on in one or more of these rooms. When appellant surrendered his lease contract and until the second party had rented the property he paid a nominal rent for one of the rooms in which to store his goods and belongings. When appellant surrendered his contract to the owner, Robinson, it was understood between them that Robinson desired to rent the property, and appellant offered to aid him in securing another renter. This appel-

lant did, and the other party moved in about two months after appellant vacated and paid Robinson the rent for the time that he occupied the rooms. Gambling was carried on in one or more of the rooms while in possession and under the control of the second renter. There is abundant testimony to the effect that gambling was carried on. It is also shown that appellant played in some of the games. There is no evidence of a direct nature that appellant had any interest in the house, and the State's case, therefore was one of circumstantial evidence growing out of the facts stated. In the absence of any direct or positive evidence that appellant was interested in the house as owner or keeper, the case became one of circumstantial evidence. His connection, if any, as keeper is largely dependent upon the fact that he was in and about the house and knew that gaming was carried on, and indulged in such gaming. Quite a number of other parties were in and about the house and gambled, and some of them rather extensively as evidenced by the testimony. The court did not instruct the jury with reference to the law applicable to cases of circumstantial evidence, and this constitutes one of the grounds relied upon by appellant for reversal. We are of opinion this proposition is well taken, and the court erred in not giving such charge.

Bill of exceptions No. 9 recites that while Martin was testifying in behalf of the State, the district attorney asked: "Did you see Jerry Roberts up there?" (meaning the premises where the gambling was being carried on). The witness answered: "Yes, sir." "Did you see him buy chips from John Bell, defendant?" "No, sir; I didn't see him buy any chips." "Didn't you swear before the grand jury that you did?" Appellant objected, and the court sustained the objection. The district attorney then stated, while the witness was on the witness stand: "I am laying a predicate for a perjury case." Exception was taken to this remark. We think it should have been sustained, and the jury informed that this testimony was illegal. Such remarks should not be indulged. The witness had failed to give testimony adverse to the State. It was a failure of testimony, and, therefore, he could not be contradicted or impeached, and under such circumstances his evidence before the grand jury was not permissible. In order to permit such witness to be impeached upon this line he must give testimony that is adverse to the State. There seems to be no question of the fact that the remark of the district attorney, that he was laying a predicate for a case of perjury against the witness, was clearly inadmissible. It was a statement of his to the effect that the witness was swearing falsely, and this before the jury.

The assistant county attorney, testifying for the State, stated that he knew the place where the alleged gambling is said to have occurred, and that he had assisted the chief of police of the City of Texarkana and other officers in making a raid upon the place in 1917. After being asked various questions he went into detail as to instructions he gave the officers in approaching the place and how to make the entrance,

and as to how they obtained admittance, and in the following bill of exceptions he was permitted to state that the place was pretty well known and had been pointed out to him, which was interrupted by an objection. The court then stated: "You want to prove the reputation of it?". The district attorney stated he wanted to prove the name of it; what it was known by. The court stated: "If it has a name and was known by the public, I will let him tell what it was." Appellant excepted. "Q. Was that a pretty well known place? A. Yes, sir; I think it was, and it had been pointed out to me by a number of people in Texarkana, and I had been asked why we didn't break it up." This was interrupted by objection. The court stated: "You say that it was a pretty well known place?" This was interrupted by an objection. The court then remarked: "I rule he can prove what. the house was called, the name of it; I sustain the objection to the well known house, unless the defendant proves the reputation of it, and I don't know whether he can do that or not." The witness was then asked if he knew the name of the house. He answered: "I don't know that it had such a name as you would speak of a place as a bank or the Cosmopolitan hotel. It was spoken of to me as being Mr. Bell's gambling house up there, and folks were jumping on me about it." Various objections were urged to this which we think were well taken. This character of testimony is not admissible. The fact that people told him that it was Bell's gambling house was not admissible. If it was Bell's gambling house this fact could be shown by facts and circumstances attending it, but control and ownership could not be proven in this manner. The authorities are pretty clear upon this proposition.

Exceptions were reserved to the charge and refusal to give special instructions. Among others, the court was requested to instruct the jury to the effect that defendant was not on trial for playing at, or betting on any game prohibited by law, and the evidence to the effect that the defendant during the fall of 1917 played and bet on games of cards which the evidence shows were played in the rooms under discussion, would not constitute basis for a conviction for keeping and permitting cards to be played on the premises. We are of opinion this charge should have been given under the facts. It is a different offense to play or bet at cards from that of which appellant was charged, towit: keeping a gaming house or permitting cards to be played in the house under his control. The jury, therefore, should have had this, or a similar charge given them to the effect that they could not convict appellant for betting at cards under an indictment charging him with keeping a gaming house.

There was evidence to the effect that in a conversation between Robinson, owner of the house, and the defendant, when he surrendered his lease, appellant agreed to assist Robinson in finding a renter. This appellant did, and appellant later told Robinson that Will Campbell would rent the place, and a contract was made between Robinson and Campbell apparently, if not in fact, through the intervention of appel-

lant. Appellant asked the court to instruct the jury that under this testimony he would not be responsible for keeping the house; that he must be connected with it in some way, and this although appellant may have known or believed that Campbell intended running a gaming house. We are of opinion that there must be more testimony than the mere fact that he induced Robinson to rent Campbell the premises, knowing or believing that Campbell might carry on gaming in the rooms to predicate conviction. This might be considered as a circumstance along with other circumstances to show whether or not he was interested in the house, but the house did not belong to appellant, and he was not shown to have any interest in it further than as agent of Robinson in renting to Campbell. He may have known or believed Campbell intended to permit gaming in the rooms, yet not be guilty under the indictment. This of itself would not constitute him a keeper of a gambling house. There must be other facts and circumstances to show his connection with it, and if the jury should believe that his connection with the house was simply to obtain a renter for Robinson, and himself not further interested in it, this would not constitute him a principal or a keeper, or being interested in keeping.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*